Richard A. HIGGINS, Plaintiff,

v.

MONSANTO COMPANY, et al., Defendants.

No. 92–CV–158.

United States District Court, N.D. New York.

Sept. 26, 1994.

752

Cherundolo, Bottar Law Firm, Syracuse, NY (John C. Cherundolo, of counsel), for plaintiff.

Hiscock, Barclay Law Firm, Syracuse, NY (Robert Barrer, of counsel), Donahue, Rajkowski Law Firm, St. Cloud, MN (Paul A. Rajkowski, Carol Stark, Thomas Jovanovich, of counsel), for defendant Monsanto.

MacKenzie, Smith Law Firm, Syracuse, NY (Stephen T. Helmer, of counsel), for defendant Lesco Inc.

Sugarman, Wallace Law Firm, Syracuse, NY (Paul Gonzalez, of counsel), for defendant HACO, Inc.

Setright, Ciabotti Law Firm, Syracuse, NY (Victor J. Ciabotti, of counsel), for defendant Lebanon Chemical.

Coulter, Fraser Law Firm, Syracuse, NY (Robert Coulter, of counsel), for defendant Lewis Tree Service A/K/A Monroe Tree Service.

Hancock, Estabrook Law Firm, Syracuse, NY (Donald McCarthy, of counsel), for defendant Dowelanco.

Bond, Schoeneck Law Firm, Syracuse, NY (Thomas R. Smith, of counsel), for defendant Hoechst–Roussel Agri–Vet Co.

## MEMORANDUM—DECISION—ORDER

McAVOY, Chief Judge.

This action was originated by Plaintiff's decedent who filed the instant action on December 19, 1991. The decedent's original complaint sounded in negligence, strict liability, and breach of warranty; and was primarily predicated upon inadequate labeling of pesticides. On November 8, 1993, this Court granted Plaintiff leave to amend and substitute, and ordered partial summary judgment for Defendants on many of Plaintiff's claims. On December 23, 1993, Plaintiff filed and served her amended and supplemental complaint containing 32 counts. Defendants again move for summary judgment of Plaintiff's entire complaint.

### I. BACKGROUND

From March of 1988 through March of 1990, Plaintiff's decedent, Richard Higgins, worked for third-party defendant Monroe Tree Service. During his employment, Higgins was exposed to a number of pesticides and insecticides manufactured by Defendants. In 1990, Higgins was diagnosed with esophageal cancer; this cancer spread throughout his body and on November 20, 1992, it killed him. Decedent originally brought this suit in state court alleging that Defendants were liable for negligence, breach of an express warranty, breach of an implied warranty, and strict liability in tort.

Defendants removed the case based on diversity and moved for dismissal of the complaint on two grounds: first, that Plaintiff's request for representative substitution pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure did not meet the required deadline; second, that the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA") precludes Plaintiff's state tort law claims. 7 U.S.C. § 136 et. seq.

On November 8, 1993, this Court entertained Defendants' motions for summary judgment and Plaintiff's cross-motion to amend and substitute. The Court granted Plaintiff leave to file and serve an Amended Complaint. In ruling on Defendants' summary judgment motions, the Court held:

5. The motions of defendants and third party defendant for summary judgment dismissing the complaint and crossclaims based upon preemption under FIFRA are granted to the extent that all plaintiff's claims which are predicated upon a theory of inadequate labeling or failure to adequately warn the plaintiff of dangers alleged to be associated with use of the products manufactured and/or sold by the defendants are dismissed with prejudice.

6. The motions for summary judgment are denied in part, with leave to renew on the issue of whether, and if so to what extent, any of the claims asserted by plaintiff are predicated upon theories not involving allegations of inadequate labeling or failure to warn.

Order dated November 26, 1993.

■ On December 23, 1993, Plaintiff filed and served her Amended and Supplemental Complaint. The Complaint contains 32 counts, including the added counts of loss of consortium and wrongful death. Plaintiff's amended complaint also contains additional changes to the original complaint which were not approved by the Court. The Court's Order dated November 26, 1993 specified that Plaintiff was granted an enlargement of time for substitution of a party plaintiff, substitution of Nancy Higgins as plaintiff, and leave to amend the complaint "to the extent it seeks permission to add a cause of action for wrongful death." Order dated November 26, 1993 (emphasis added). Further, Plaintiff requested leave to amend the complaint only as to include claims of pain and suffering and wrongful death. All additional allegations are beyond the scope of the Court's order; they are violative of Fed.R.Civ.P. 15(a) and are therefore invalid. The only changes made in the amended complaint which are valid are those substituting Nancy Higgins for the now-deceased plaintiff and those adding causes of action for wrongful death. All other changes are disregarded.

Plaintiff's complaint fundamentally asserts three causes of action. The first count alleges that Defendants are negligent due to: failure to warn, inadequate labeling, inadequate testing, and failure to follow the requirements of FIFRA, 7 U.S.C. § 136 et seq. Count two alleges that Defendants breached an express and implied warranty; that the ingredients were not fit for the purpose intended and/or were not of merchantable quality. Count three alleges that Defendants are strictly liable in tort for the injuries to Plaintiff due to the defective nature of the products they introduced into the stream of commerce.

## II. ANALYSIS

The defendants in this case move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Rule 56(c) provides that the court may grant summary judgment where there are no genuine issues of material fact for trial. Fed.R.Civ.P. 56(c). If there are no genuine issues, the movant is entitled to judgment as a matter of law. When the movant meets this standard, the opposing party must present sufficient facts to demonstrate that there exists some genuine issues of material fact in order to defeat the movant's motion for summary judgment. The substantive law will determine which facts are *material,* and an issue is *genuine* if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To determine whether such a situation exists, the court will view the evidence in light most favorable to the party opposing the motion. *Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1187 (2d Cir.1987). Where, as

here, the opposing party bears the ultimate burden of proof on a particular issue, that party can defeat a properly supported summary judgment motion by producing specific facts which demonstrate a genuine issue of material fact on that issue. *See Montana v. First Federal Savings and Loan Asso.*, 869 F.2d 100, 103 (2d Cir.1989); *see also Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990). With this standard in mind, the Court addresses Defendants' motions.

In their motions for summary judgment, Defendants argue that the state law claims brought by Plaintiff are preempted by FIFRA. FIFRA was initially enacted in 1947, as a licensing and labeling law, and now comprises a "comprehensive regulatory statute" for the registration and use of pesticides. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 992, 104 S.Ct. 2862, 2867, 81 L.Ed.2d 815 (1984). Under FIFRA, no pesticide may be sold or distributed unless it has been registered by the Environmental Protection Agency ("EPA"). 7 U.S.C. § 136a(a). While FIFRA does contemplate the continued involvement of the States in the regulation of the sale and use of pesticides, it expressly mandates that the States are barred from imposing labeling requirements different from those required by EPA. *See* 7 U.S.C. § 136v(a). The relevant provision of FIFRA is section 136v, which states in pertinent part:

(a) In General

A State may regulate the sale or use of any federally registered pesticide or device in the State, but ...

(b) Uniformity

Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

7 U.S.C. § 136v.[1]

Although the language of 7 U.S.C. § 136v is unambiguous, application of this provision to the instant case is not straightforward. To best effectuate congressional intent the Court must make its interpretation of 7 U.S.C. § 136v in light of the history, statutory scheme, and purpose of FIFRA.

Since its initial passage in 1947, FIFRA has undergone several significant transformations, each reflecting dissatisfaction with existing mechanisms for limiting potential health risks posed by chemical pesticides. *See Burke v. Dow Chemical*, 797 F.Supp. 1128 (E.D.N.Y.1992). In its current form, FIFRA requires that EPA rely on manufacturers for information about the safety of their products. 7 U.S.C. § 136a(c). However, much of the information known to the manufacturer is withheld from the public; indeed, "[t]he production of data to support a pesticide registration is controlled by the registrant, and this data may be withheld from public scrutiny as a trade secret." *Burke*, 797 F.Supp. at 1134 (*quoting* Tybe A. Brett & Jane E.R. Potter, *Risks to Human Health Associated with Exposure to Pesticides at the Time of Application and the Role of the Courts*, 1 Vill.Envtl.L.J. 355, 363 (1990)).

Unless alerted by the manufacturer to dangers or the need for special restrictions in the use of the product, it is unlikely that EPA will assume the burden of deciding whether a product should not be sold to the public. *Id.* at 1135. Although no insecticide may be sold in the United States unless registered with EPA, it is the applicants for registration who are responsible for submitting performance data and draft product la-

[1]. Section 136v states in full:
§ 136v. Authority of States
(a) In General
A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.
(b) Uniformity
Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.
(c) Additional Uses
(1) A State may provide registration for additional uses of federally registered pesticides formulated for distribution and use within that State to meet special local needs in accord with the purposes of this subchapter and if registration for such use has not previously been denied, disapproved, or canceled by the Administrator....

bels to EPA. 7 U.S.C. § 136a(a). The degree of specificity that must be submitted depends on the nature of the pesticide and its intended use. *See* 40 C.F.R. § 158.100–158.740.

Based on the information provided by the registrant, EPA must register the product if it determines that:

(A) its composition is .such as to warrant the proposed claims for it;

(B) its labeling and other material require[d] to be submitted comply with the requirements of this subchapter;

(C) it will perform its intended function without unreasonable adverse effects on the environment; and

(D) when used in accordance with widespread and commonly recognized practice it will not generally cause unreasonable adverse effects on the environment.

7 U.S.C. § 136a(c)(5). "[U]nreasonable adverse effects on the environment" are defined as "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide." 7 U.S.C. § 136(bb).

If it appears that a pesticide does not comply with the provisions of FIFRA, EPA may initiate proceedings to impose use restrictions on, or cancel the registration of, a pesticide. 7 U.S.C. § 136d(b). Whether such limitations should apply depends largely on the information supplied by the manufacturer. Although FIFRA does provide for individuals with standing to petition EPA to cancel or suspend registrations and also to seek judicial review of EPA decisions under 7 U.S.C. § 136n(a), because consumers will not ordinarily bring such petitions absent a catastrophe or voluntary action by the manufacturer, EPA oversight will not be nearly as protective of persons exposed to pesticides as state tort law. *Burke,* 797 F.Supp. at 1135. With this in mind we turn to the question of whether Plaintiff's claims are preempted by FIFRA.

## A. Preemption Doctrine

■ Under the Supremacy Clause, U.S. Const., Art. VI, cl. 2, state laws that "interfere with, or are contrary to the laws of congress, made in pursuance of the constitution" are invalid. *Gibbons v. Ogden,* 22 U.S. (9 Wheat) 1, 6 L.Ed. 23 (1824). The preemption doctrine requires that an otherwise valid state law is invalid if (1) Congress expressly preempts the state law, (2) Congress completely occupies the law's field of operation, (3) compliance with both federal and state law is impossible, or (4) the state law presents an obstacle to the achievement of the full purposes and objectives of Congress. *Wisconsin Public Intervenor v. Mortier,* 501 U.S. 597, 603–07, 111 S.Ct. 2476, 2481–82, 115 L.Ed.2d 532 (1991).

■ However, courts are not to liberally infer preemption, particularly in areas traditionally of core concern to the states such as tort law. *Florida Lime & Avocado Growers v. Paul,* 373 U.S. 132, 144, 83 S.Ct. 1210, 1218, 10 L.Ed.2d 248 (1963); *Rice v. Santa Fe Elevator,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Indeed, the Supreme Court shows great reluctance in finding preemption absent clear congressional intent. *See Mortier,* 501 U.S. at 607, 111 S.Ct. at 2483 (finding that FIFRA does not preempt local government regulation of pesticide use); *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984) (state punitive damage provisions are not preempted by Atomic Energy Act).

■ Moreover, as the Supreme Court's recent cigarette labeling case indicates, where Congress provides an express preemption clause, the presumption against preemption requires courts to construe the clause narrowly. *Cipollone v. Liggett Group,* —— U.S. ——, ——, 112 S.Ct. 2608, 2618, 120 L.Ed.2d 407 (1992).

In *Cipollone,* the Supreme Court analyzed the preemptive effect of the Federal Cigarette Labeling and Advertising Act enacted in 1965, and its successor, the Public Health Cigarette Smoking Act of 1969. A central issue before the Court was the preemptive effect of section 5(b) of the Federal Cigarette Labeling and Advertising Act, which states:

(b) No requirement or prohibition based upon smoking and health shall be imposed under State law with respect to advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.

15 U.S.C. § 1334.

At the outset in *Cipollone*, the Court carefully circumscribed its preemption analysis, noting that "congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not preempted." *Cipollone*, —— U.S. at ——, 112 S.Ct. at 2618. Within this constraint, the Court found that state law failure to warn claims against cigarette manufacturers were preempted by the Federal Cigarette Labeling and Advertising Act *only* to the extent that they required a showing that the manufacturers should have included additional, or more clearly stated warnings. *Id.* at ——, 112 S.Ct. at 2621 (emphasis added). The Court went on to state that "[t]he Act does not, however, pre-empt petitioner's claims that rely solely on respondents' testing or research practices or other actions unrelated to advertising or promotion." *Id.*

Similar to the statute before the *Cipollone* Court, Congress' inclusion of an express preemption provision in FIFRA[2] requires that this court "need only identify the domain expressly pre-empted by [the relevant] sections." *Id.* at ——, 112 S.Ct. at 2618.

### i. Preemption under FIFRA

The preemption provision and the extensive labeling regulations enacted under FIFRA have given rise to a large body of case law. Prior to *Cipollone*, the predominant theory of most courts was that section 136v did *not* preempt state law claims for failure to warn. *See Cox v. Velsicol Chemical,* 704 F.Supp. 85 (E.D.Pa.1989); *Abbot v. American Cyanamid,* 844 F.2d 1108 (4th Cir.1988); *MacDonald v. Monsanto Co.,* 813 F.Supp. 1258 (E.D.Tex.1993). Since *Cipollone*, however, four United States Courts of Appeal have decided that section 136v does in fact preempt state law claims for failure to warn. *See King v. E.I. Dupont de Nemours and*

*Co.,* 996 F.2d 1346 (1st Cir.1993); *Shaw v. Dow Brands,* 994 F.2d 364 (7th Cir.1993); *Arkansas–Platte & Gulf Partnership v. Van Waters & Rogers, Inc.,* 981 F.2d 1177 (10th Cir.1993); *Papas v. Upjohn Co.,* 985 F.2d 516 (11th Cir.1993).

Accordingly, this court held in its Order dated November 26, 1993, that FIFRA preempts Plaintiffs' state tort law claims predicated on failure to warn and inadequacy of product labeling. Therefore, the issue currently before the court then is which counts of Plaintiff's complaint are in fact predicated on failure to warn and/or inadequate labeling. As stated previously, Plaintiff's complaint fundamentally alleges three causes of action: (1) negligence; (2) breach of express and/or implied warranty; and (3) strict liability in tort. Defendants assert that all of the counts within Plaintiff's complaint warrant dismissal due to the preemptive effect of FIFRA. This court does not agree.

In all of the post-*Cipollone* cases dealing with the preemptive effect of FIFRA on state tort claims, the courts have been adamant in articulating that only those causes of action "predicated upon the finding of inadequate labeling or warning are preempted" and that claims that do not challenge the labeling of the defendant's product are not preempted. *Papas,* 985 F.2d at 520; *Burke,* 797 F.Supp. at 1139.

In determining whether Plaintiff's state tort claims are preempted by FIFRA it is now necessary to look to what Plaintiff will need to prove in order to prevail on her claims. If any one of the elements requires a finding that the labeling or warnings were inadequate, those claims are preempted.

### ii. Plaintiff's Negligence Claims

Plaintiff's original complaint alleges eleven instances of negligence. These allegations implicate: (1) failure to warn, (2) failure to adequately label, (3) failure to conduct adequate testing, and (4) failure to comply with the provisions of FIFRA, 7 U.S.C. § 136 *et. seq.* As discussed earlier, Plaintiff's claims which are predicated on failure to warn and inadequate labeling are preempted. There-

**2.** *See* 7 U.S.C. § 136v.

fore, the only negligence claims currently before the court are Plaintiff's allegations that Defendants' failed to conduct adequate testing and failed to comply with the provisions of FIFRA.

■ The court reiterates that the preemptive scope of FIFRA extends only to claims predicated on failure to warn or inadequate labeling. Defendants argue that a challenge to the adequacy of testing may implicate labeling issues since additional testing might disclose the need for further warnings. The court, however, is unwilling to read FIFRA's preemption so broadly, particularly in light of the presumption against preemption which counsels a narrow construction of preemption provisions. *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2618; *Florida Lime,* 373 U.S. at 144, 83 S.Ct. at 1218. Instead, the court finds the reasoning of the Fourth and First Circuits persuasive and holds that "claims for negligent testing, manufacturing, and formulating . . . are *not* preempted by FIFRA." *Worm v. American Cyanamid,* 5 F.3d 744, 747 (4th Cir.1993) (emphasis added); *Williams v. State of Louisiana,* 640 So.2d 365, 367 (La. App. 1st Cir.1994); *see also DerGazarian v. Dow Chem.,* 836 F.Supp. 1429, 1447 (W.D.Ark.1993) (FIFRA does not preempt claims for failure to use ordinary care in formulation, inspection, and testing); *Wright v. Dow Chem. U.S.A.,* 845 F.Supp. 503, 507 (M.D.Tenn.1993) (FIFRA does not preempt non-labeling claims for defective design and failure to properly test and study); *cf. Cipollone,* —— U.S. at ——, 112 S.Ct. at 2622 (Public Health Cigarette Smoking Act of 1969 does not preempt claims that rely solely on testing or research practices).

■ Plaintiff's second allegation of negligence rests on Defendants' alleged failure to disclose to EPA the known toxic effects of the chemicals in question. Defendants contend that allegations of FIFRA violations are also preempted. In support of this position, Defendants rely primarily on the Eleventh Circuit case of *Papas v. Upjohn Co.,* 985 F.2d 516 (11th Cir.1993) ("Papas II"). Defendants' reliance on *Papas II,* however, is misplaced.

Although the court in *Papas II* stated, "[w]e think FIFRA leaves states with no authority to police manufacturers' compliance with federal procedures", the court's rationale was limited to allowing an "EPA administrator, not a jury, to determine whether *labelling* and *packaging* information is incomplete or inaccurate." *Id.* at 519 (emphasis added). Therefore, *Papas II* should not be read broadly. Moreover, the Eleventh Circuit later stated in reference to its earlier *Papas I* decision[3], that "[o]n remand, this Court took the hint and re-decided the case solely on express pre-emption grounds." *Myrick v. Freuhauf Corp.,* 13 F.3d 1516, 1522 (11th Cir.1994). The Second Circuit also states that where a court determines that a preemption provision provides a "reliable indicium of congressional intent a court is required to restrict its preemption analysis to the terms of that clause." *Toy Mfrs. of Am. v. Blumenthal,* 986 F.2d 615, 623 (2nd Cir.1993) (preemptive effect of Federal Hazardous Substances Act).

As discussed earlier, the scope of FIFRA's express preemption provision only extends to claims which are predicated on failure to warn or inadequate labeling. If a plaintiff can establish a violation of FIFRA which is not predicated on failure to warn or inadequate labeling that claim is actionable. This conclusion finds support in the longstanding statutory canon that cautions "[i]t is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct." *Silkwood,* 464 U.S. at 251, 104 S.Ct. at 623; *see also United Constr. Workers v. Laburnum Constr.,* 347 U.S. 656, 663–64, 74 S.Ct. 833, 836–38, 98 L.Ed. 1025 (1954).

Our decision today echoes that of the Fourth Circuit in that, "[i]f a state elects to recognize that a breach of a FIFRA-created duty forms the basis for a state remedy, we have held that it is permitted to do so by 7 U.S.C. § 136v(b)." *Worm,* 5 F.3d at 748. Allowing such actions, however, does not ordain the establishment or enforcement of a common law duty that would impose labeling requirements inconsistent with FIFRA. Rather, our holding only applies where a

**3.** *Papas v. Upjohn Co.,* 926 F.2d 1019 (11th Cir. 1991) ("Papas I").

plaintiff can establish a violation of FIFRA which is not predicated on failure to warn or inadequate labeling. In this instance, Plaintiff's allegation that Defendants' failed to fully disclose information to EPA meets this requirement, and is thus not preempted.

### iii. Plaintiff's Product Liability Claims

Plaintiff also alleges that Defendants are strictly liable in tort for injuries to Plaintiff due to the defective nature of the products they introduced into the stream of commerce. As only those claims predicated on failure to warn and inadequate labeling are preempted by FIFRA, the court reiterates that it must look to "'whether the legal duty that is the predicate of the common law damages action constitutes' a requirement for labeling or packaging that is in addition to or different from those required by FIFRA." *Bingham v. Terminix Int'l. Co., L.P.*, 850 F.Supp. 516, 521 (S.D.Miss.1994) (quoting *Cipollone*, —— U.S. at ——, 112 S.Ct. at 2621). Plaintiff's strict liability claims therefore will be preempted only if they require a finding that Defendants' labeling or warnings were deficient.

The Second Circuit has recognized that, in New York, a plaintiff in a strict products liability action "may assert that the product is defective because of a mistake in manufacturing, . . . improper design, or . . . the manufacturer's failure to provide adequate warnings regarding use of the product." *Fane v. Zimmer, Inc.*, 927 F.2d 124, 128 (2d Cir.1991) (quoting *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 106–107, 450 N.E.2d 204, 207, 463 N.Y.S.2d 398, 401 (1983). In the present case, Plaintiff asserts that Defendants produced and introduced into the stream of commerce products which were unreasonably dangerous for their intended use and that the defective nature of such products could not be determined upon reasonable inspection. As the court in *Voss* held that "a defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use . . . ." *id.*, Plaintiff's claims of strict liability in the present case rest on a theory of defective design and not on a theory of inadequate warnings.

Conceding Plaintiff's defective design theory of strict liability, Defendants contend that such claims still should be preempted since they still might require a showing that EPA-approved labeling did not adequately warn of the dangers associated with the product. Having already rejected an analogous argument by Defendants in response to Plaintiff's claim of negligent failure to conduct adequate testing, *see supra* at 757–758, the court now will do so again for the same reason that it is unwilling to read FIFRA's preemption provision so broadly in light of the presumption against preemption counseling a narrow construction of such a provision. *Cipollone*, —— U.S. at ——, 112 S.Ct. at 2618; *Bingham*, 850 F.Supp. at 521–522.

The court instead finds that because Plaintiff's claims of strict liability are based on design defect and not on inadequate labeling, they are not preempted by FIFRA. This result is supported by *Fisher v. Chevron Chem. Co.*, 716 F.Supp. 1283 (W.D.Mo.1989), and *Kennan v. Dow Chem. Co.*, 717 F.Supp. 799 (M.D.Fla.1989), both of which held that strict liability claims alleging that product was sold in a defective and unreasonably dangerous condition are not preempted by FIFRA. Further, those courts that have held that strict liability claims are preempted by FIFRA have done so because such claims were based on alleged labeling inadequacies. *See Shaw v. Dow Brands, Inc.*, 994 F.2d 364 (7th Cir.1993) (strict liability claim based on failure to warn against combining regulated products preempted by FIFRA); *Worm v. American Cyanamid Co.*, 5 F.3d 744 (4th Cir.1993) (strict liability claim that product unreasonably dangerous due to failure to provide inadequate labeling preempted by FIFRA); *King v. Dupont*, 996 F.2d 1346 (1st Cir.1993) (strict liability claim alleging unreasonably and defectively dangerous product due to a failure to warn preempted by FIFRA); *Trinity Mountain Seed Co. v. MSD Agvet*, 844 F.Supp. 597 (D.Idaho 1994) (strict liability claim preempted by FIFRA because based on pesticide label language); *Kinser v. Ciba–Geigy Corp.*, 837 F.Supp. 217 (W.D.Ky. 1993) (strict liability claim alleging unreason-

ably dangerous product due to failure to warn preempted by FIFRA). Therefore, in the present case, Plaintiff's claims of strict liability based on the theory of defective design do survive preemption under FIFRA.

### iv. Plaintiff's Breach of Warranty Claims

Plaintiff's original complaint asserts that defendants have breached express warranties, and implied warranties of merchantability and fitness for a particular purpose. To determine if 7 U.S.C. § 136v(b) preempts these state law claims, a court must look at two primary criteria. Section 136v(b) states that a claim is preempted if (1) a state is imposing a requirement that (2) relates to the labeling of a product. *See* 7 U.S.C. § 136v(b).[4] Since Congress has explicitly stated its position on preemption, a claim that meets the contra-positive of either of these conditions will be preserved. *See Cipollone,* —— U.S. at ——, 112 S.Ct. at 2618; *supra* p. 11. This court will analyze the two prongs of § 136v(b) with respect to both the express and implied warranty claims.

### a. Plaintiff's Express Warranty Claim
### i. Analysis under 7 U.S.C. § 136v(b)

■ Express warranties are not grounded in state law, but rather, are voluntarily assumed obligations commonly employed to gain competitive advantage in the marketplace.[5] *See Cipollone,* —— U.S. at ——, 112 S.Ct. at 2622 (stating that "[a] manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of the warranty ... [a]ccordingly, the 'requirements' imposed by an express warranty claim are not 'imposed under State law,' but rather imposed by the warrantor"); *Papas II,* 985 F.2d at 519 ("Express warrantors seek competitive advantage by promising buyers that certain factual representations about their goods are true."). As such,

their very nature contradicts the wording of 7 U.S.C. § 136v(b), which dictates that a "*state* shall not impose or continue in effect" requirements on labeling.[6] 7 U.S.C. § 136v(b) (emphasis supplied). Therefore, based on strict statutory interpretation, express warranties that are voluntarily assumed survive preemption despite their relationship to labeling.

It has been argued that express warranties are preempted because they are enforced through state contract law. *See Cipollone,* —— U.S. at ——, 112 S.Ct. at 2636 (Scalia, J., concurring in judgment, dissenting in part) (stating that " '[a] contract has no legal force apart from the law that acknowledges its binding character' " (quoting *Norfolk & Western R. v. American Train Dispatchers Assn.,* 499 U.S. 117, 130, 111 S.Ct. 1156, 1164, 113 L.Ed.2d 95 (1991))). We find this argument unpersuasive on three counts. First, the *Cipollone* majority clearly dictates that when Congress enacts a preemption clause, matters beyond its scope are not preempted; preemption clauses are to be narrowly construed. *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2618. Since § 136v(b) specifically prohibits state regulations from controlling labeling, but does not address self-imposed obligations enforced by States, courts are to interpret the latter as surviving preemption. Second, if states are not permitted to enforce express warranties that relate to labeling, warrantors will have less freedom in which to compete in the marketplace. *See generally Papas II,* 985 F.2d at 519–20. Third, if an individual's only legal recourse is to bring a claim under FIFRA, express warranties covering subjects outside the scope of the Act will be futile. *See Silkwood,* 464 U.S. at 251, 104 S.Ct. at 623. This court therefore holds that the Plaintiff's express warranty claims, to the extent that they are based on voluntarily assumed express warranties, are actionable.

---

4. Specifically, 7 U.S.C.A. § 136v(b) states that "[s]uch State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter."

5. *See generally* N.Y. Uniform Commercial Code Law § 2–313(1)(a) (McKinney 1993) (stating that "[a]ny affirmation of fact or promise made by the

seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise")

6. An exception exists if the express warranty is EPA mandated. *See infra,* subsection ii.

## ii. Exception to Analysis under 7 U.S.C. § 136v(b)

■ Defendant Monsanto, in its Memorandum of Law dated March 30, 1994, relies on *Worm II*[7], stating that the company "cannot be penalized for the EPA approved warranties." *See* Monsanto's Memorandum of Law, March 30, 1994, p. 9. The defendant appears to be addressing an exception to the general analysis under § 136v(b), but his reliance on *Worm II* is misplaced. Although this court adopts the *Worm II* holding for purposes of the express warranty analysis, we find that it does not support the defendant's assertion.

The relevant portion of the *Worm II* opinion states in part: "[b]ecause the Worms point to no statement made by American Cyanamid other than that required *and* approved by the EPA, their warranty claims are preempted." *Worm*, 5 F.3d at 749 (emphasis supplied). This court reads the operative word "and" as indicating the Fourth Circuit's intention to preempt only those express warranty claims that are EPA mandated. Consequently, this court adopts the *Worm II* express warranty holding for the purpose of this analysis for two reasons.

First, express warranties have a voluntary quality, which is missing if they are mandated by EPA. The rationale that warrantors should be held to contracts that they voluntarily enter into does not apply when their actions are forced. Second, express warranties are not enforceable through state contract law if Congress has expressly preempted the law or has completely occupied the law's field of operation, as is the case with EPA mandated labeling. *Mortier*, 501 U.S. at 603–07, 111 S.Ct. at 2481–82; *see also* page 756, supra. Based on the foregoing justifications, we hold that EPA mandated warranties are preempted.

■ We now consider the defendants assertions. Defendant Monsanto does not argue that the warranties were EPA mandated, but that they were EPA approved. This court does not find that EPA approval necessitates preemption under FIFRA for three reasons. First, a warranty does not lose its voluntary quality through EPA approval. Second, the mere fact that Congress gives EPA the power to approve labels does not indicate that the legislative body necessarily intended that EPA control over express warranties designated on the labels. Third, the defendant's argument is inconsistent with the reasoning in *Worm II, Cipollone* and *Mortier*. *Worm II*, 5 F.3d at 749; *Cipollone*, —— U.S. at ——, 112 S.Ct. at 2618; *Mortier*, 501 U.S. at 605, 111 S.Ct. at 2482. The latter two cases suggest that when warranties are EPA approved but not EPA mandated, Congress has not attempted to occupy an entire field and has not expressly preempted the claims. Therefore, since Plaintiff's express warranty claims are not required by EPA, they do not warrant an exception to the general preemption analysis.[8] This court finds that Plaintiff's express warranty claims survive preemption.

### b. Plaintiff's Implied Warranty Claims

■ In her memorandum of law, dated April 23, 1994, Plaintiff Higgins concedes that implied warranties that relate to labeling and packaging are preempted. Plaintiff proceeds to assert that her claims survive preemption because they are not related to either factor.

Analyzing the Plaintiff's implied warranty claims under § 136v(b), we find the first prong satisfied; implied warranties are root-

---

7. *Worm v. American Cyanamid Co.*, 5 F.3d 744 (4th Cir.1993).

8. Note that the First Circuit's holding in *King v. Collagen*, 983 F.2d 1130 (1st Cir.1993), seems to support defendant's argument. *See King*, 983 F.2d at 1135 (holding that express warranty claims that could only arise out of FDA approval are preempted). With further analysis, however, we find that the holding does not apply to the facts of the case at bar. In *King*, the First Circuit noted that their decision was not in accord with *Cipollone*, differentiating the two cases by contrasting the high level of control over packaging in the *King* case, as opposed to the low level in *Cipollone*. *Id.* The court stated that the government agency in *King* "retains rigid control over the entirety of the labeling and packaging ... largely displacing the ability of manufacturers to make additional claims." *Id.* Because the provisions of FIFRA do not exhaust the field of labeling, we find the *King* decision nondispositive.

ed in state law.[9] *See Papas II,* 985 F.2d at 519 (stating that "an implied warranty is a requirement imposed under state law"). A decision to the contrary would allow the states to levy requirements on labeling in addition to those imposed by FIFRA. *See King,* 983 F.2d at 1135 (concluding that if implied warranties are not preempted it would produce additional labeling requirements); *Prather v. Ciba–Geigy Corp.,* 852 F.Supp. 530, 532 (W.D.La.1994) ("FIFRA prescribes detailed labeling and packaging requirements which, if observed, preempt state law claims for failure to warn or breach of warranty that would effectively require a manufacturer to include additional or different information in a pesticide's federally approved label or promotional material" (citing *Worm,* 5 F.3d at 749)).

We agree that a cause of action for breach of an implied warranty stems from the sale of the goods as well as from state regulation,[10] but believe that Congress, by so thoroughly regulating the labeling of the products, intended to preempt implied warranty claims. To hold otherwise contravenes Congress' intent in enacting the legislation, therefore implied warranty claims that relate to labeling are preempted. In light of this, we must consider the second prong of § 136v(b): whether the implied warranty claims at issue relate to the labeling or packaging of a product. *See generally Trinity Mountain Seed Co. v. MSD Agvet,* 844 F.Supp. 597 (D.Idaho 1994) (holding that FIFRA preempts breach of warranty claims based on labeling).

Implied warranty claims imposed on the sale of chemicals generally fall into one of two categories. A manufacturer may be liable for breach of an implied warranty of merchantability if the chemical compound is hazardous when used in accordance with the directions on the label; or, he may be liable for breach of an implied warranty of fitness for a particular purpose if the chemical is not fit for the purpose conveyed through the label.[11] Since both causes of action are based on labeling, implied warranty claims related to the sale of chemicals are usually preempted.

In the case at bar, the Plaintiff has failed to articulate with sufficient detail which avenue she wishes to pursue her implied warranty claims along. However, such an oversight is irrelevant due to the fact that this court finds that both legal theories are predicated on an inadequacy in labeling. Accordingly, the Plaintiff's claims based upon implied warranty are preempted by FIFRA.

## B. Adequacy of Evidence Under Summary Judgment

As outlined above, the party opposing summary judgment may not rest upon the mere allegations or denials of her claim; rather, the party must present sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *See Anderson,* 477 U.S. 242, 106 S.Ct. 2505. However, this presupposes that the opposing party has developed such evidence through discovery. In the absence of adequate discovery, summary judgment may not be appropriate. Fed.R.Civ.P. 56(f). Rule 56(f) of

---

**9.** *See generally* N.Y. Uniform Commercial Code Law §§ 2–314, 2–315 (McKinley 1993). Section 2–314, entitled "Implied Warranty: Merchantability; Usage of Trade," states in part that "[g]oods to be merchantable must be ... adequately contained, packaged, and labeled as the agreement may require...." N.Y. Uniform Commercial Code Law §§ 2–314(2)(e) (McKinley 1993). Section 2–315 addresses the implied warranty of fitness for a particular purpose.

**10.** *See Wright v. Dow Chemical, U.S.A.,* 845 F.Supp. 503, 511 (M.D.Tenn.1993) (holding that an implied warranty of merchantability "does not create a labeling requirement different from or in addition to those mandated by FIFRA" because "the implied warranty of merchantabili-

ty arises from the sale itself, not from a state labeling regulation" (citation omitted)).

**11.** The official comment to 2–315 states that "the buyer need not bring home to the seller actual knowledge of the particular purpose for which the goods are intended or of his reliance on the seller's skill and judgment, if the circumstances are such that the seller has reason to realize the purpose intended or that the reliance exists." N.Y. Uniform Commercial Code Law § 2–315 cmt. 1 (McKinley 1993). The purposes of a chemical are generally communicated by what is on, or omitted from, the label. Therefore, labeling often gives rise to reliance on the part of the buyer.

the Federal Rules of Civil Procedure specifically provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f). Rule 56(f) is discretionary and provides a district court two options when a party opposing summary judgment cannot present "facts essential to justify the party's opposition": rule on the summary judgment motion or allow discovery. *Habib v. Raytheon Co.,* 616 F.2d 1204, 1210 (D.C.Cir.1980).

■ In the instant action, Plaintiff has not supplied any supporting affidavits establishing a factual dispute. In justification, Plaintiff asserts that this Court's November Order and subsequent scheduling conference required that the current summary judgment motions be limited solely to the question of preemption. Although Plaintiff's interpretation of the Court's order is incorrect, based on the Court's language [12] it was reasonable for Plaintiff to conclude that the scope of the motions was indeed limited to the question of preemption.

■ In granting Plaintiff additional time for discovery, the Court is cognizant of the fact that summary judgment is a "drastic device," which should not be granted when there are major factual contentions in dispute; particularly when, as here, one party has yet to exercise its opportunities for pretrial discovery. *National Life Ins. Co. v. Solomon,* 529 F.2d 59, 61 (2nd Cir.1975) (citations omitted). The Court is not yet equipped to resolve the factual disputes raised by the pleadings. Therefore, the Court does not express any opinion as to the validity of Plaintiff's factual allegations. Our holding relative to discovery is simply proce-

dural. Plaintiff is granted 120 days to complete discovery.

## III. CONCLUSION

In sum, the court finds the Plaintiff's claims alleging failure to conduct adequate testing, and failure to comply with FIFRA are not preempted by FIFRA. Additionally, the court finds the claims alleging breach of express warranty and strict liability in tort are also not preempted by FIFRA. However, based on the logic articulated previously, the court finds the Plaintiff's claims based upon implied warranty are preempted by FIFRA and therefore must be dismissed. Lastly, the court will order that all discovery in this matter be complete within 120 days from the date of this order.

IT IS SO ORDERED.

12. "... leave to renew on the issue of whether, and if so to what extent, any of the claims asserted by plaintiff are predicated upon theories not involving allegations of inadequate labeling or failure to warn." Order dated November 26, 1993.