William JOHNSON and Kathleen Johnson, Individually and as Husband and Wife, Plaintiffs,

v.

MONSANTO CHEMICAL COMPANY, Chapman Chemical Company, Inc. and ISK Biosciences, Inc., Defendants.

No. 99–CV–2112(DRH).

United States District Court, N.D. New York.

Jan. 30, 2001.

Thomas E. DeLorenzo, DeLorenzo, Pasquariello Law Firm, Schenectady, NY, for plaintiffs.

John J. Henry, Whiteman, Osterman Law Firm, Albany, NY, Walt Addison Linscott, phv, Thompson, Hine Law Firm, Cleveland, OH, Dennis A. First, O'Connor, O'Connor Law Firm, Albany, NY, for defendants.

### MEMORANDUM—DECISION AND ORDER

KAHN, District Judge.

Presently before the Court are defendant Monsanto Chemical Company's ("Monsanto") motion to dismiss, defendants Chapman Chemical Company's ("Chapman") and ISK Biosciences' ("ISK") motion to dismiss and Plaintiffs' cross-motion to amend. For the reasons stated herein, Defendants' motions are granted in part and denied in part without prejudice and Plaintiff's motion is denied without prejudice to refile.

### I. Background

Plaintiffs bring the present product liability action against Defendants, alleging that they negligently designed, manufactured, distributed, formulated, marketed, tested, supplied, and sold the chemical Pentachlorophenol, resulting in injury to Plaintiffs.

Plaintiffs allege that Pentachlorophenol was utilized in the treatment of wood which was harvested and "dipped" at plaintiff William Johnson's ("Mr.Johnson") place of employment, the Camp Summit Shock Incarceration Facility. Plaintiffs contend that, due to Mr. Johnson's exposure to Pentachlorophenol, he contracted Occupational Asthma. Plaintiffs allege that this resulted in the loss of a significant portion of Mr. Johnson's breathing capacity and an inability to perform many tasks that he was previously able to perform, such as walking for long distances, climbing stairs and mowing his lawn.

Defendants argue that Plaintiffs' claims should be dismissed because they are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") and, in the alternative, because they fail to state a claim upon which relief may be granted. Plaintiffs, in turn, argue that their claims are not preempted by FIFRA. Moreover, Plaintiffs argue that their complaint does state a claim upon which relief may be granted and, in the alternative, seek leave of the Court to amend their complaint.

### II. Analysis

#### A. Standard of Review

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) must be denied "unless it

appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In assessing the sufficiency, "all factual allegations in the complaint must be taken as true," *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991), and all reasonable inferences must be construed in favor of the plaintiff, *see Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1099 (2d Cir.1988).

> [C]onsideration is limited to the factual allegations in [the] complaint, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in Plaintiffs' possession or of which Plaintiffs had knowledge and relied on in bringing suit.

*Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993).

The Rules do not require the plaintiff to set out in detail the facts upon which the claim is based, but only that a defendant be given "fair notice of what the claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Individual allegations, however, that are so baldly conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains are meaningless as a practical matter and, as a matter of law, are insufficient to state a claim. *See Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987).

## B. FIFRA Preemption

■ The Supremacy Clause, U.S. Const., Art. VI, cl. 2, provides that state laws that "interfere with, or are contrary to the laws of congress, made in pursuance of the constitution" are invalid. *Gibbons v. Ogden,* 22 U.S.(9 Wheat.) 1, 211, 6 L.Ed. 23 (1824). Specifically, the preemption doctrine invalidates an otherwise valid state law if (1) Congress expressly preempts the state law, (2) Congress completely occupies the law's field of operation, (3) compliance with both federal and state law is impossible, or (4) the state law is an "obstacle to the accomplishment and execution of the full purposes and objective of Congress." *Wisconsin Public Intervenor v. Mortier,* 501 U.S. 597, 603–607, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991).

In this case, Congress included an express preemption provision when it enacted FIFRA. *See* 7 U.S.C. § 136v. However, the Supreme Court has made it clear that courts are not to liberally infer preemption, particularly in areas that are traditionally reserved to the States. *See Florida Lime & Avocado Growers v. Paul,* 373 U.S. 132, 144, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963); *Rice v. Santa Fe Elevator,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). The Court has repeatedly held that "[c]onsideration of issues arising under the Supremacy Clause 'start[s] with the assumption that the historic police powers of the States [are] not to be superceded by ... Federal Act unless that [is] the clear and manifest purpose of Congress.'" *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (quoting *Rice,* 331 U.S. at 230, 67 S.Ct. 1146). Moreover, the Court has held that where Congress provides an express preemption clause, the presumption against preemption requires courts to construe the clause narrowly. *See Cipollone,* 505 U.S. at 517–18, 112 S.Ct. 2608 (courts "need only identify the domain expressly pre-empted by [the relevant] sections").

Initially enacted in 1947, FIFRA is a comprehensive statute governing the regulation of the registration and use of pesticides. *See Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 992, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984). FIFRA requires that all pesticides to be sold and distributed must be registered by the Environmental Protection Agency ("EPA"). *See* 7 U.S.C. § 136a(a).

Although not completely occupying the field, which would prevent any state involvement in the regulation of pesticides, FIFRA expressly mandates that States may not impose labeling requirements different from those required by the EPA. *See* 7 U.S.C. § 136v. The statute states in pertinent part:

(a) In General

A state may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation foes not permit any sale or use prohibited by this subchapter.

(b) Uniformity

Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

7 U.S.C. § 136v.

In a similar context, the Supreme Court has held that the term "requirements" includes state common law actions for damages. *See Cipollone*, 505 U.S. at 521, 112 S.Ct. 2608. Following the *Cipollone* ruling, those Courts considering FIFRA's preemption of state tort claims have unanimously held that section 136v expressly preempts state common law tort claims which would create additional or different labeling requirements from those required under FIFRA. *See Grenier v. Vermont Log Bldgs., Inc.*, 96 F.3d 559, 563–65 (1st Cir.1996); *Hawkins v. Leslie's Pool Mart, Inc.*, 184 F.3d 244, 249 (3d Cir.1999); *Worm v. American Cyanamid Co.*, 5 F.3d 744, 748 (4th Cir.1993); *MacDonald v. Monsanto*, 27 F.3d 1021, 1024–25 (5th Cir. 1994); *Shaw v. Dow Brands*, 994 F.2d 364, 371 (7th Cir.1993); *National Bank of Commerce, of El Dorado, Ark. v. Dow Chemical Co.*, 165 F.3d 602, 609 (8th Cir. 1999); *Taylor AG Indus. v. Pure–Gro*, 54 F.3d 555, 560 (9th Cir.1995); *Arkansas–Platte & Gulf v. Van Waters & Rogers, Inc.*, 959 F.2d 158, 162 (10th Cir.), *vacated sub nom. Arkansas–Platte & Gulf v. Dow Chemical Co.*, 506 U.S. 910, 113 S.Ct. 314, 121 L.Ed.2d 235 (1992), and *aff'd on remand sub nom. Arkansas–Platte & Gulf v. Van Waters & Rogers, Inc.*, 981 F.2d 1177 (10th Cir.), and *cert. denied sub nom. Arkansas–Platte & Gulf v. Dow Chemical Co.*, 510 U.S. 813, 114 S.Ct. 60, 126 L.Ed.2d 30 (1993); *Papas v. Upjohn Co.*, 985 F.2d 516, 518 (11th Cir.) *cert. denied sub nom. Papas v. Zoecon Corp.*, 510 U.S. 913, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993). Although the Second Circuit has not addressed FIFRA preemption, this Court provided a thorough analysis of the issue in *Higgins v. Monsanto Co.*, 862 F.Supp. 751 (N.D.N.Y.1994). In so doing, the Court noted an important limitation on the general rule, holding that "only those causes of action 'predicated upon the finding of inadequate labeling or warning are preempted' and that claims that do not challenge the labeling of the defendant's product are not preempted." *Id.* at 757 (quoting *Papas*, 985 F.2d at 520); *see also Worm*, 5 F.3d at 747; *El Dorado*, 165 F.3d at 609; *Grenier*, 96 F.3d at 564–65.

Plaintiffs' bring an exhaustive list of claims against Defendants, which include: (1) breach of the implied warranty of merchantability; (2) breach of express warranty; (3) breach of implied warranty of fitness for a particular purpose; (4) negligence; (5) gross negligence; (6) fraudulent misrepresentation; (7) strict liability; (8) violations of the New York State Environmental Conservation Law ("ECL") and FIFRA; and (9) loss of consortium. The Court will consider these claims in turn to determine whether any of the elements of the claim require "a finding that the labeling or warnings were inadequate." *Higgins*, 862 F.Supp. at 757. If so, the claim will be preempted. *See id.*

*1. Implied Warranties*

Plaintiffs' first and third causes of action allege that Defendants have breached implied warranties of merchantability and fitness for a particular purpose, respectively. In order to determine

whether such claims are subject to FIFRA preemption, the Court must look to "two primary criteria." *Higgins,* 862 F.Supp. at 760. Section 136v(b) preempts a claim "if (1) a state is imposing a requirement that (2) relates to the labeling of a product." *Id.* Because Congress explicitly stated its position on preemption in enacting FIFRA, "a claim that meets the contrapositive of either of these conditions will be preserved." *Id.* (citing *Cipollone,* 505 U.S. at 517–18, 112 S.Ct. 2608).

Implied warranty claims clearly satisfy the first prong of this analysis, as they are rooted in state law. *See Higgins,* 862 F.Supp. at 762. "A decision to the contrary would allow the states to levy requirements on labeling in addition to those imposed by FIFRA." *Id.*

■ Implied warranty claims imposed on the sale of chemicals such as the one at issue here fall into two categories.

> A manufacturer may be liable for breach of an implied warranty of merchantability if the chemical compound is hazardous when used in accordance with the directions on the label; or, he may be liable for breach of an implied warranty of fitness for a particular purpose if the chemical is not fit for the purpose conveyed through the label.

*Id.* Both legal theories are therefore predicated on an inadequacy in labeling and are consequently preempted by FIFRA. *See id.*

### 2. *Express Warranty*

■ Plaintiffs' claim for breach of express warranty, on the other hand, is treated differently by the Courts. "Express warranties are not grounded in state law, but rather, are voluntarily assumed obligations commonly employed to gain competitive advantage in the marketplace." *Id.* at 760 (citing *Cipollone,* 505 U.S. at 526 n. 24, 112 S.Ct. 2608 (holding that "common understanding dictates that a contractual requirement, although only enforceable under state law, is not 'imposed' by the state, but rather is 'imposed'

by the contracting party upon itself")). Because Section 136v(b) only prohibits the state from imposing requirements, "express warranties that are voluntarily assumed survive preemption despite their relationship to labeling." *Higgins,* 862 F.Supp. at 760. However, there is a very important exception to this rule. When a plaintiff's claim is based on nothing more than statements that were "required and approved by the EPA," it will be preempted. *Worm,* 5 F.3d at 749; *see Welchert v. American Cyanamid, Inc.,* 59 F.3d 69, 73 (8th Cir.1995); *Higgins,* 862 F.Supp. at 761. This is so because "[t]he rationale that warrantors should be held to contracts that they voluntarily enter into does not apply when their actions are forced." *Higgins,* 862 F.Supp. at 761.

In this case, Plaintiffs have not specified the terms or source of the express warranty on which they allegedly relied. Accordingly, the Court is not in a position to determine whether the warranty relied on was required by the EPA. As discussed below, although denying Plaintiffs' motion to amend its complaint, the Court will allow Plaintiffs another opportunity to seek leave to amend. In their amended complaint, Plaintiffs will be required to set forth more specifically the basis of their breach of express warranty claim.

### 3. *Negligence, Gross Negligence and Statutory Claims*

Plaintiffs' fourth and fifth causes of action allege a broad variety of negligent actions on the part of Defendants, ranging from the testing and design of Pentachlorophenol to its manufacture and to its marketing and sale.

■ To the extent that Plaintiffs' negligence claims are "predicated on failure to warn and inadequate labeling," they are preempted by FIFRA. *Higgins,* 862 F.Supp. at 757. However, this Court has held, in agreement with several of the circuit courts to have addressed the issue, "that 'claims for negligent testing, manu-

facturing, and formulating ... are *not* preempted by FIFRA.' " *Id.* at 758 (quoting *Worm,* 5 F.3d at 747); *see El Dorado,* 165 F.3d at 609; *Grenier,* 96 F.3d at 565.

■ However, Plaintiffs are cautioned that, in crafting their amended complaint, they will not be able to avoid FIFRA preemption by merely calling something a design or manufacturing defect. *See Grenier,* 96 F.3d at 565; *El Dorado,* 165 F.3d at 609. Merely to allege that something is "defectively designed or manufactured because it was foreseeable that it would be used [for a particular purpose] and that it was unfit *for this use* " is "no more than an attack on the failure to warn against [that particular use]" and will therefore be preempted. *Grenier,* 96 F.3d at 565–6. Claims· of misdesign or mismanufacture which the Court regards as thinly veiled labeling or failure to warn claims will not stand.

■ Plaintiffs' also allege "misbranding and mislabeling the chemical in violation of relevant statutes" as part of their negligence claims along with their eighth claim, which alleges, in part, a violation of FIFRA.[1]

This Court has held that alleged violations of FIFRA are not preempted to the extent they are not predicated on a failure to warn or inadequate labeling. *See Higgins,* 862 F.Supp. at 758–59. The Court based its holding on the Fourth Circuit's decision in *Worm,* which held that "[i]f a state elects to recognize that a breach of a FIFRA-created duty forms the basis for a state remedy, we have held that it is permitted to do so by 7 U.S.C. § 136v(b)." *Worm,* 5 F.3d at 748. The *Worm* Court,

however, limited its holding by noting that "[a]llowing such actions ... is substantially distinguishable from accepting the argument that the state common law duty to warn is not 'in addition to or different from' the federally defined duty." *Id.* Accordingly, such actions are limited to FIFRA violations in which a failure to warn or inadequate labeling are not alleged, such as the claim in *Higgins,* in which the plaintiff alleged that the defendants had breached their FIFRA-created duty to fully disclose information to the EPA. *See Higgins,* 862 F.Supp. at 758–59.

### 4. *Fraudulent Misrepresentation*

Plaintiffs' sixth cause of action alleges fraudulent misrepresentation. Fraudulent misrepresentation has not been previously addressed by the Second Circuit or this Court in this context. It has, however, received somewhat mixed treatment in the other circuit courts.

In *Kuiper,* the Seventh Circuit, presented with a fraudulent representation claim, pointed to a disagreement between the circuits regarding the treatment of claims based upon statements made apart from those on a product's label. *See Kuiper,* 131 F.3d at 662–63. The Court pointed out that the Fourth Circuit had held that claims against off-label statements which merely repeat information or language contained in the label are necessarily aimed at the label itself and are therefore preempted. *See id.* (citing *Lowe v. Sporicidin Int'l,* 47 F.3d 124, 130 (4th Cir.1995); *Worm,* 5 F.3d at 748). The Court then noted that the Ninth and Eleventh Circuits had gone further, holding that " 'any

---

1. As part of their eighth cause of action, Plaintiffs also allege a violation of the New York State Environmental Conservation Law. In response to Defendants' contention that there is no private right of action under the ECL, Plaintiffs point to the case of *Russin Beer, Inc. v. Phoenix Beverages, Inc.,* 147 Misc.2d 273, 556 N.Y.S.2d 454, 456 (1990) (allowing a private right of action under the ECL to a beverage retailer), to suggest that there is a state of flux in regard to whether or

not such a private right exists. However, this case merely dealt with the question of whether the retailer was included in the group of "distributors" who were expressly granted a cause of action under the ECL for bottle deposit reimbursement. *See id.* 556 N.Y.S.2d at 455. Plaintiffs point to no private cause of action such as the one brought in this case. Accordingly, their claim, to the extent it alleges a violation of the ECL, is dismissed.

claims that point-of-sale signs, consumer notices, or other informational materials failed adequately to warn the plaintiff necessarily challenge the adequacy of the warnings provided on the product's labeling or packaging' and therefore are preempted." *Kuiper,* 131 F.3d at 663 (quoting *Taylor AG,* 54 F.3d at 561 (quoting *Papas v. Upjohn Co.,* 985 F.2d at 519)). Finally, the Court discussed still other courts which merely noted the dispute between the circuits without choosing between the rules. *See Kuiper,* 131 F.3d at 663 (citing *Grenier,* 96 F.3d at 564; *Andrus v. AgrEvo USA Co.,* 178 F.3d 395, 400 (5th Cir.1999)). They did so because the claims at issue before them involved statements which repeated language found on the label and would be preempted under either rule. *See id.*

While the *Kuiper* Court based its treatment of fraudulent misrepresentations on the line of cases dealing with failure to warn in off-label statements, there is Supreme Court precedent to suggest that different treatment should be accorded claims of fraud. In *Cipollone,* a case often relied on by the circuit courts in FIFRA preemption matters, the Court was presented with two different theories of fraudulent misrepresentation. *See Cipollone,* 505 U.S. at 527, 112 S.Ct. 2608.

The first claim alleged that the defendants, through their advertising, neutralized the effect of federally mandated warning labels. *See id.* The Court held that this claim was preempted because it amounted to a state requirement that "warnings be included in advertising and promotional materials." *Id.*

The second claim, on the other hand, alleged "intentional fraud and misrepresentation both by 'false representation of a material fact [and by] conceal[ment of] a material fact.'" *Id.* The Court held that the plaintiff's concealment claim was not preempted to the extent it relied on "a state-law duty to disclose ... facts through channels of communication other than advertising or promotion," such as

required disclosure to a state administrative agency. Moreover, the Court held that plaintiff's claim of fraudulent misrepresentation of material facts with respect to advertising and promotions was not preempted because it was based on a general "duty not to deceive." *Id.*

In this case, Plaintiffs have not made clear what the source of their fraudulent misrepresentation claim is, or on what theory it is based. It is not clear if their claims is based on a weakening of the mandated labels, an affirmative misrepresentation, or concealment of a material fact. Like the circuit courts dealing with this, until this Court is presented with a need to choose between these approaches, it will not do so. Accordingly, in their amended complaint, Plaintiffs will be required to set forth more specifically the basis of their fraudulent misrepresentation claim.

### 5. *Strict Liability*

Plaintiffs' seventh cause of action alleges that Defendants are strictly liable in tort for injuries to Mr. Johnson caused by the defective nature of their product. These claims "will be preempted only if they require a finding that Defendants' labeling or warnings were deficient." *Higgins,* 862 F.Supp. at 759.

In New York, a plaintiff "may assert that the product is defective because of mistake in manufacturing, ... improper design, or ... the manufacturer's failure to provide adequate warnings regarding use of the product." *Fane v. Zimmer, Inc.,* 927 F.2d 124, 128 (2d Cir.1991) (quoting *Voss v. Black & Decker Mfg. Co.,* 59 N.Y.2d 102, 463 N.Y.S.2d 398, 450 N.E.2d 204, 207 (1983)). In *Higgins,* the plaintiff alleged that the defendants "produced and introduced into the stream of commerce products which were unreasonably dangerous for their intended use and that the defective nature of such products could not be determined upon reasonable inspection." *Higgins,* 862 F.Supp. at 759. The

Court held that such a claim was based on a theory of defective design and not a theory of inadequate warnings, and was therefore not preempted by FIFRA. *See id.* The Court noted that those courts having held that strict liability claims were preempted by FIFRA had "done so because such claims were based on alleged labeling inadequacies." *Id.*

Plaintiffs' strict liability claim in this case is substantially the same as that brought in the *Higgins* case. Plaintiffs allege that Pentachlorophenol was "in a dangerous, defective, and unsafe condition" while in Defendants possession and that these conditions could not have been discovered with reasonable care. Therefore, the Court finds that Plaintiffs' strict liability claims are based on design defect, not inadequate labeling, and are not preempted by FIFRA.

### 6. *Loss of Consortium*

Defendants contend that Plaintiffs' claim for loss of consortium is a derivative claim and should be dismissed in the absence of any remaining claims for the injured spouse. *See Liff v. Schildkrout,* 49 N.Y.2d 622, 427 N.Y.S.2d 746, 404 N.E.2d 1288, 1291 (1980). Because the Court has not dismissed all of Plaintiff's other claims, Defendants' argument is no longer applicable. Accordingly, this portion of Defendants' motion to dismiss is denied.

### C. Failure to State a Claim

In the alternative, Defendants argue that Plaintiffs' Complaint fails to a state a cause of action for breach of either of the implied warranties, for breach of express warranty, and for fraudulent misrepresentation. Because the Court has dismissed Plaintiff' claims for breach of the implied warranties, Defendants arguments are moot as to those claims. Furthermore, as the Court is instructing Plaintiffs to file and serve an amended complaint addressing the shortcomings in their claims for breach of express warranty and fraudulent

misrepresentation, Defendants' arguments as to those claims are also moot.

### D. Motion to Amend

Plaintiffs seek leave of this Court to amend their complaint. After the filing of a responsive pleading, a party may amend a pleading only by leave of the court, which leave "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). This Court has held that leave to amend shall be freely given absent any reason to the contrary, such as bad faith, undue delay, or futility of amendment. *See Stetz v. Reeher Enters., Inc.,* 70 F.Supp.2d 119, 121 (N.D.N.Y.1999).

There is no evidence of bad faith or undue delay on the part of Plaintiffs. However, Defendants argue both that the amendment would be futile and that Plaintiffs' motion is procedurally defective. However, Defendants' argument that the motion is procedurally defective swallows its futility argument. Because Plaintiffs have not attached a proposed amended complaint to their motion, as required by L.R. 7.1(a)(4), the Court is not in a position to determine whether Plaintiffs' proposed amendment would be futile. Accordingly, Plaintiffs' motion for leave to amend is denied without prejudice to refile.

### III. CONCLUSION

For the reasons stated, it is hereby

ORDERED that Defendants' motions to dismiss are GRANTED as to Plaintiffs' first and third causes of action and as to Plaintiffs' eighth cause of action to the extent it seeks to allege a private right of action under the New York State Environmental Conservation Law and, as to all other claims, DENIED without prejudice to refile in the event Plaintiff files an amended complaint;

ORDERED that Plaintiffs' motion for leave to amend the complaint is DENIED without prejudice to refile; and it is

FURTHER ORDERED that the Clerk of the Court serve a copy of this Order on all parties by regular mail.

IT IS SO ORDERED.