# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1200

_____

National Bank of Commerce,     *
of El Dorado, Arkansas,     *
guardian of the estate (only) of     *
Matthew Nolan Arnold, a minor;     *
Michael David Arnold,     *
Individually, and as parent and next     *
friend of Matthew Nolan Arnold,     *
a minor,     *
    *
         Appellants.     *
    *    Appeal from the United States
       v.     *    District Court for the Western
    *    District of Arkansas.
Dow Chemical Co.; Rofan Services,     *
Inc.; Epco, Inc., of Indiana,     *
doing business as Dowelanco;     *
Chevron Chemical Company;     *
Ciba Geigy Corp.; Bengal Chemical     *
Company; United Industries     *
Corporation; John Does #1-10,     *
    *
         Appellees.     *

_____

Submitted:  September 25, 1998

Filed:  January 11, 1999

_____

Before RICHARD S. ARNOLD, BEAM, and HANSEN, Circuit Judges.

_____

BEAM, Circuit Judge.

Representatives of Matthew Nolan Arnold, and his father Michael David Arnold (the Arnolds), appeal an adverse grant of summary judgment on their claims against several chemical companies. The district court[1] granted summary judgment in favor of Dow Chemical Co., Rofan Services, Inc. and Epco, Inc. because the evidence showed that their product had not been used in the Arnolds' home. The district court granted summary judgment to the remaining chemical companies, United Industries Corp., Ciba Geigy Corp., Chevron Chemical Co., and Bengal Chemical Co. because it found that the Federal Insecticide, Fungicide and Rodenticide Act preempts the Arnolds' claims. We affirm.

## I.    BACKGROUND

Jerry and Patricia Arnold had problems with roaches and other household insects. To eliminate the problem, they allegedly purchased and applied three pesticides: Spectracide Dursban Indoor and Outdoor Insect Control, Ortho Hi-Power Ant, Roach & Spider Spray/Formula II, and Bengal Roach Spray. Jerry and Patricia Arnold contend they were using these products when their son and daughter-in-law, Michael and Debra Arnold, moved into their home in December of 1992. Around the time they moved in, Debra Arnold became pregnant with Matthew Arnold who was born September 7, 1993. The use of pesticides allegedly continued throughout the early stages of Debra Arnold's pregnancy, that is until April 1, 1993. When Matthew Arnold was born, he suffered from multiple birth defects. The Arnolds filed this action in federal district court alleging negligence, products liability, and breach of warranty claims against Dow Chemical Co., Rofan Services, Inc. and Epco, Inc. of Indiana

---

[1]The Honorable Harry F. Barnes, United States District Judge for the Western District of Arkansas.

(collectively "Dow"), United Industries Corp., Ciba Geigy Corp., Chevron Chemical Co., and Bengal Chemical Co.

Dow manufactures the chemical Dursban. Dursban, in turn, is used by United Industries Corp. (United) to formulate the product Spectracide Dursban Indoor and Outdoor Insect Control (Spectracide). Spectracide is then distributed by United to the public. The Arnolds contend that the Spectracide was purchased from Henley's Feed Store and came in a metal or glass container. Buddy Henley, the proprietor of Henley's Feed Store, testified that the store has never sold nor stocked the Spectracide product and United, the product's distributor, presented evidence that the product was never formulated or distributed in a metal or glass container.

Ciba Geigy Corp. manufactures the chemical Diazinon. Diazinon is used by the Chevron Chemical Co. to formulate the product Ortho Hi-Power Ant, Roach & Spider Spray/Formula II. Chevron distributes this product to the public. Bengal Chemical Co. manufactures and distributes Bengal Roach Spray.

In order to market their products, Dow, United, Ciba Geigy, Chevron, and Bengal registered them with the United States Environmental Protection Agency (EPA) and received an approved label. The registration process includes, among other things, identification of the product's chemical, toxicological, physiological, biochemical, environmental, and ecological characteristics. The EPA then issues a Pesticide Fact Sheet summarizing the product's information. The authority and statutory framework for this process is provided by the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA). 7 U.S.C. §§ 136(a)-(y).

After discovery in this action had continued for over a year, but before the discovery completion deadline had passed, all of the companies moved for summary judgment. The Arnolds responded by seeking to delay summary judgment to allow completion of additional discovery. The Arnolds' essentially stated only that more

discovery could be helpful. The district court denied further discovery and granted summary judgment for each company. The district court granted summary judgment to Ciba Geigy, Chevron, Bengal, and United because it found that FIFRA preempts the Arnolds' claims. With respect to Dow, the district court found "the products used by the Arnolds could not have contained Dursban." National Bank of Commerce v. Dow Chem. Co., No. 96-1099, memorandum op. at 13 (W.D. Ark. Nov. 19, 1997).[2]

## II.    DISCUSSION

The Arnolds advance three reasons why summary judgment was inappropriate. First, they assert that summary judgment was premature because discovery had not been completed. Second, they contend that the evidence adequately identifies the product used in the Arnolds' home. Finally, the Arnolds assert that FIFRA does not preempt their claims.

### A.    Completion of Discovery

The Arnolds argue that the outstanding discovery in their case would have resulted in acquisition of "more evidence in support of their response to defendants' Motions for Summary Judgment." Brief for Appellants at 5. The Arnolds' contention is not novel since summary judgment is appropriate when there is "adequate time" for discovery and not solely when discovery is complete. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The district court has discretion to determine when there has been adequate time for discovery and we review that determination for abuse of discretion. See Noll v. Petrovsky, 828 F.2d 461, 462 (8th Cir. 1987).

---

[2]Dow did not move for summary judgment based on FIFRA preemption. Instead, their summary judgment motion was based solely on product identification. United moved for summary judgment on product identification along with Dow, but United's motion was ruled moot because they were granted summary judgment on the preemption issue.

When faced with summary judgment motions before the completion of discovery, the district court also has discretion, upon a motion under Federal Rule of Civil Procedure 56(f), to refuse summary judgment or to order a continuance "to permit affidavits to be obtained or depositions to be taken or discovery to be had." Fed. R. Civ. P. 56(f). The Arnolds responded to the summary judgment motions by speculating that more discovery would be useful.[3] They failed to show how the additional discovery would alter the evidence before the district court. A conclusory statement that some useful evidence could possibly be found is insufficient to preclude the termination of discovery. See City of Mt. Pleasant v. Associated Elec. Coop., Inc., 838 F.2d 268, 280 (8th Cir. 1988). We find the district court did not abuse its discretion by denying further discovery and ruling on summary judgment after over a year of discovery had been completed.

## B. Product Identification

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The district court granted Dow summary judgment because the uncontroverted evidence established that United's Spectracide product, containing Dow's Dursban product, was not used by the Arnolds.[4]

---

[3]There is a great deal of discussion in the briefs about a Rule 56(f) motion. In our search of the record we were unable to find any such motion by the Arnolds. The only request for further discovery was by way of vague reference in responses to motions for summary judgment.

[4]As earlier noted, United, which formulates the Spectracide containing Dow's Dursban product, also made a product identification claim, but its motion was mooted because of the district court's preemption decision.

We review the district court's grant of summary judgment de novo.  See South Dakota Mining Ass'n, Inc. v. Lawrence County, 155 F.3d 1005, 1009 (8th Cir. 1998).

Before Dow and/or United can be held liable for causing an injury, the Arnolds must establish that the Spectracide product was actually used.  The Arnolds argue that their affidavits demonstrate that a genuine issue of material fact exists concerning whether the Spectracide product was used in the Arnold home.[5]  In their affidavits, the Arnolds state that they purchased the Spectracide product at Henley's Feed Store and that it came in a glass or metal container.  However, during discovery Dow and United produced uncontroverted evidence that Henley's Feed Store has neither sold nor stocked Spectracide Dursban Indoor and Outdoor Insect Control and that it was never formulated or distributed in a metal or glass container.[6]

Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  It is not enough to rest on the pleadings and allegations.  See Chism v. W.R. Grace & Co., 158 F.3d 988, 990 (8th Cir. 1998).  Aside from the pleadings and allegations, the Arnolds rest their

---

[5]The Arnolds attempted to introduce additional evidence, by way of affidavits, on a motion for reconsideration of summary judgment.  This is only permitted in exceptional circumstances.  See Concordia College Corp. v. W.R. Grace & Co., 999 F.2d 326, 330 (8th Cir. 1993).  The Arnolds have made no showing why the evidence could not have been presented earlier.  Furthermore, the new affidavits are contradictory and of little help.  The district court correctly refused to consider the evidence.

[6]At oral argument, the Arnolds' counsel suggested that maybe it was "some other store."  This is an equivocation of recent vintage attempting to press a claim unsupported by the record.

product identification burden on a snippet of uncertain testimony.[7]  This does not create a genuine issue of material fact because the Arnolds "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.  They must show there is sufficient evidence to support a jury verdict in their favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  The Arnolds have not made the requisite showing.  Although only Dow was granted summary judgment on the product identification issue, we find that both Dow and United are entitled to summary judgment on this ground.

---

[7]The Arnolds seek to survive summary judgment on this issue by pointing to the following testimony:

> Q:    What do you recall purchasing there?
> A:    I bought the Bengal spray there.  And then pesticide with Dursban.
> Q:    Do you recall what that was called?
> A:    Spectracide?  Something like that?
> * * *
> Q:    Do you recall what type of packaging it came in?
> A:    Not exactly.  I know it was something that would have had a screw-on top because it was a concentrate that had to be mixed up.  But whether it was metal or glass, I couldn't tell you.
> Q:    Do you recall that it was one of the two, metal or glass?
> A:    Yes, sir.

Brief for Appellants at 40-41.

This interchange does nothing to controvert Dow and United's evidence.  All the allegations and pleadings name Spectracide Dursban Indoor and Outdoor Insect control.  The Arnolds would have us find that the statement–"something like that"–creates  creates a genuine issue of material fact.  It does not.

## C.    FIFRA Preemption

The district court granted summary judgment to Ciba Geigy Corp., Chevron Chemical Co., Bengal Chemical Co., and United because FIFRA preempts the Arnolds' claims.  Preemption, which stems from the Supremacy Clause of the United States Constitution, invalidates state edicts that interfere with or are contrary to federal law. See U.S. Const. art. VI, cl. 2; Wisconsin Public Intervenor v. Mortier, 501 U.S. 597, 604 (1991).  Such state action includes legislative enactments and executive pronouncements (positive law) and also encompasses applicable common law claims recognized by state courts.  See Cipollone v. Liggett Group, Inc., 505 U.S. 504, 521-22 (1992). Preemption is a question of law that we review de novo.  See Humphrey v. Sequentia, Inc., 58 F.3d 1238, 1243 (8th Cir. 1995).

"FIFRA creates a comprehensive scheme for the regulation of pesticide labeling and packaging." Welchert v. American Cyanamid, Inc., 59 F.3d 69, 71 (8th Cir. 1995). The EPA enforces FIFRA, in part, through extensive review and approval of pesticide labels.  Once a label is approved, FIFRA expressly provides for a defense, arising from preemption, against certain state law claims.  However, the Act does not provide a total bar against state regulation. FIFRA only restricts state-based demands that "impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter."  7 U.S.C. § 136v(b).  FIFRA's limitation on state labeling and packaging rules is balanced by its grant of authority for states to otherwise "regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter."  Id. § 136v(a).  Thus, the language of FIFRA attempts to strike a balance between state and federal control.  Cf. Mortier, 501 U.S. at 613 (stating that FIFRA leaves ample room for state regulation).

The Arnolds contend that their negligence, products liability and breach of warranty claims are not preempted by FIFRA's language.  However, under the guise of

negligence and products liability claims, the Arnolds make numerous assertions of failure to place a warning label on all containers, and failure to place adequate warnings on the chemical products.[8]

We have held that state common law claims for "inadequate labeling or failure to warn [are] preempted by FIFRA." Bice v. Leslie's Poolmart, Inc., 39 F.3d 887, 888 (8th Cir. 1994). The Arnolds' claims of inadequate labeling or failure to warn fall squarely within Bice and are preempted. It is immaterial whether an inadequate labeling or failure to warn claim is brought under a negligence or products liability theory.[9] If a state law claim is *premised* on inadequate labeling or a failure to warn, the impact of allowing the claim would be to impose an additional or different requirement for the label or packaging. See National Bank of Commerce v. Kimberly-Clark Corp., 38 F.3d 988, 992 (8th Cir. 1994) (finding that FIFRA, to a certain extent, preempts state tort claims *based* on inadequate labeling); see also King v. E.I. DuPont De Nemours and Co., 996 F.2d 1346, 1349 (1st Cir. 1993) (holding that FIFRA preempts state law tort claims *based* on failure to warn); Papas v. Upjohn Co., 985 F.2d 516, 520 (11th Cir. 1993) (concluding that FIFRA preempts state common law actions to the *extent predicated* on inadequate labeling or packaging).

The Arnolds advance several breach of warranty claims, but we have also held that common law claims for breach of express warranty are preempted by FIFRA. See

---

[8]The Arnolds' complaint alleges such things as: negligence in "failing to place a warning label on all containers," negligence in "implementing and maintaining an ongoing program of education and indoctrination," negligence in "suppressing information from the public," product defect from defendants' failure "to adequately warn," and product defect by continuing "to sell, distribute and apply the product to the unsuspecting consuming pubic." Appendix for Appellants at 36-61. These claims are clearly premised on a failure to warn or to properly label and are therefore preempted.

[9]The broad title of products liability generally encompasses manufacturing defect, defect in design, and defect because of inadequate instructions or warnings. See Restatement (Third) of Torts § 2 (1998); Ark. Code Ann. § 16-116-102(5).

Welchert, 59 F.3d at 73. Thus, the Arnolds' express warranty claims fall within Welchert and are preempted. Furthermore, we find that FIFRA preempts the Arnolds' implied warranty claims. Allowing their implied warranty claims to survive FIFRA preemption would result in additional or different requirements for the pesticide label or package.

Finally, the Arnolds' advance claims for defective manufacture or design based upon the presence of toxic impurities in the goods. The chemical companies contend, nevertheless, that the claims either relate to product labeling or packaging or are artfully articulated to disguise claims based on inadequate labeling, failure to warn, or a breach of warranty. The district court agreed with the companies and held that all of the Arnolds' claims were "based upon inadequate labeling or warnings," and therefore are preempted by FIFRA. National Bank, No. 96-1099, at 10. Since it is clear that not all state regulation is preempted under FIFRA, see Mortier, 501 U.S. at 614, we must determine whether the law preempts these particular claims.

The complaint alleges that at the time of sale, the Diazinon in the Ortho product they used was contaminated with other toxic substances, such as Sulfotepp, that are teratogenic (causing fetal malformations).[10] To support their claim, the Arnolds

---

[10]Although the Arnolds note the absence of Sulfotepp, or tetraethyl dithiopyrophosphate, in the EPA's Pesticide Fact Sheet, there is some evidence that the EPA is aware of the impurity Sulfotepp and approved the label for Diazinon [and Dursban] despite its potential existence. The chemical companies argue that because the EPA is possibly aware of the occurrence of Sulfotepp in the manufacture of Diazinon, this claim really relates to a failure to warn claim. Nevertheless, we view the evidence in the light most favorable to the non-moving party. See Matsushita, 475 U.S. at 587. The Arnolds argue that the absence of Sulfotepp in the EPA's Pesticide Fact Sheet suggests that the information was withheld from the EPA and that the chemical companies should thereby be estopped from asserting FIFRA preemption. We express no view concerning whether a defendant may be estopped from claiming FIFRA preemption when material has been withheld from the EPA in the registration process because there is no reasonable inference in the record that such occurred here. The Arnolds' remaining claims, not specifically addressed in this opinion, lack sufficient merit to be discussed.

produce three scholarly articles that discuss Sulfotepp. These articles advance the following propositions: (1) it is well known that Sulfotepp is an impurity in Diazinon; (2) Sulfotepp possibly occurs or results from the production or manufacture of Diazinon; and (3) Sulfotepp should be eliminated, if possible, or regulatory action should be taken.[11]

A claim of defective manufacture or design of this kind does not directly attack the EPA-approved label or packaging. Although the specifications and ingredients may be known, approved and accounted for in the EPA-approved label, a defect may still occur as a result of inadequate manufacturing or inappropriate design. Accordingly, we agree with the Fourth Circuit, that such claims are not preempted by FIFRA. See Worm v. American Cyanamid Co., 5 F.3d 744, 749 (4th Cir. 1993); see also Reutzel v. Spartan Chem. Co., 903 F. Supp. 1272, 1285 (N.D. Iowa 1995). In other words, defectively manufactured or designed products properly labeled under FIFRA may still be subject to state regulation, in the form of common law or other claims.[12]

The Arnolds' defective manufacturing or design claims fail, however, not because of preemption, but because they lack sufficient evidentiary support to escape summary judgment. Cf. Worm, 5 F.3d at 749 (finding insufficient support for claims that survived FIFRA preemption). In order to survive summary judgment, the Arnolds must provide sufficient evidence of the following: (1) the product supplier manufactures, assembles, sells, or distributes the product; (2) the product was defective rendering it

---

[11]See Appendix for Appellee Ciba Geigy Corp. at 98-116 (reproducing articles by William J. Allender and James Keegan; E. P. Meier, et al.; and Richard Turle and Barry Levac).

[12]This includes state regulation in the form of positive law–which happens to be the case here since Arkansas has codified the claim.

unreasonably dangerous; and (3) the defective condition proximately caused the harm. See Ark. Code Ann. § 4-86-102(a).

There is no question that the Arnolds have met the first requirement under Arkansas law. Their difficulties arise with the second and third requirements. The three articles discussing Diazinon and Sulfotepp do not provide the requisite support. The Arnolds' evidence shows that Debra Arnold was allegedly exposed to some level of Diazinon during pregnancy, that the Diazinon could have contained the impurity Sulfotepp, and that Matthew Arnold has birth defects. What the Arnolds' evidence does not show is whether the product, with or without Sulfotepp, was unreasonably dangerous, and whether the defective condition proximately caused the harm.[13]

The Arnolds' allegations seem to suggest that the mere existence of Sulfotepp demonstrates a manufacturing or design defect which is unreasonably dangerous and must have caused the birth defects. A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment. See Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985). More is required.[14] The burden rests with the Arnolds. They must come forward with sufficient evidence to support their claims and cannot stand on their complaint, see Celotex, 477 U.S. at 324, and unfounded speculation. Therefore, the district court's grant of summary judgment was correct, albeit on slightly different grounds. See Hall v. LHACO, Inc., 140 F.3d 1190, 1193 (8th Cir. 1998)

---

[13]In a recent case involving the pesticide Dursban, we held that expert testimony linking a child's birth defects and the pesticide Dursban did not have "a valid scientific foundation, as required by the Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)." National Bank of Commerce v. Dow Chem. Co., 133 F.3d 1132 (8th Cir. 1998). The Arnolds likewise failed to elicit admissible expert testimony linking the birth defects to a defective and unreasonably dangerous product.

[14]See, e.g., Davis v. DuPont, 729 F. Supp. 652, 654-55 (E.D. Ark. 1989) (analyzing the Arkansas strict products liability statute).

(finding that the district court's grant of summary judgment can be affirmed on any ground supported by the record).

## III. CONCLUSION

For the foregoing reasons, the district court's judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.