Daniel MORRIS, Plaintiff,

v.

CRAWFORD COUNTY, ARKANSAS, et al., Defendants.

No. 01–2053.

United States District Court, W.D. Arkansas, Fort Smith Division.

Oct. 23, 2001.

Tanya B. Spavins, Nolan, Caddell & Reynolds, Fort Smith, AR, for plaintiff.

Ralph C. Ohm, (representing Crawford County), Hot Springs, AR, Ben Core, Daily & Woods, Fort Smith, AR, for defendants.

## ORDER

DAWSON, District Judge.

Plaintiff brings this action asserting a cause of action under 42 U.S.C. § 1983 and a state-law battery claim. Plaintiff alleges that he was subjected to excessive force while detained in the Crawford County Detention Center (CCDC). He names as Defendants Crawford County, Arkansas, and Sheriff Bob Ross, Deputy John McAllister, and Deputy Larry Ruiz, individually and in their official capacities.[1] The Court previously denied Deputy Ruiz's motion for summary judgment in his individual capacity, finding that he was not entitled to qualified-immunity, as there was evidence that he used a "knee drop" on Plaintiff, thereby severing Plaintiff's intestine, when Plaintiff may not have been offering any resistance. Currently before the Court is a motion for summary judgment on Plaintiff's claims against Deputy Ruiz in his official capacity, his claims against Deputy McAllister and Sheriff Ross in both their individual and official capacities, and his claims against Crawford County.

In determining whether summary judgment is appropriate, the facts and inferences from the facts are viewed in the light most favorable to the non-moving party. Further, the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Nat'l. Bank of Commerce of El Dorado, Arkansas v. Dow Chem. Co., 165 F.3d 602 (8th Cir.1999).

## Official–Capacity Claims

The claims against Sheriff Ross and Deputies McAllister and Ruiz in their official capacities are deemed to be the same claims made against Crawford County. See Liebe v. Norton, 157 F.3d 574, 578–79 (8th Cir.1998). Plaintiff's official-capacity claims against these Defendants are accordingly dismissed as redundant.

---

1. Plaintiff originally named Deputies Jerry Pittman and Donnie Threet as additional Defendants, but they were dismissed by joint stipulation of the parties.

**Deputy McAllister in his Individual Capacity**

■ Deputy McAllister contends that the only force he used on Plaintiff was a single "backhand" to the side of his face and that he used this force because Plaintiff "grabbed at" him when he was trying to exit Plaintiff's cell. Deputy McAllister argues that he is entitled to summary judgment, as the force he used was reasonable under the circumstances and that Plaintiff did not sustain any type of injury. Deputy McAllister further argues that even if the force he used against Plaintiff were to be deemed excessive, he is entitled to qualified immunity.

Plaintiff disputes Deputy McAllister's version of events and submits a sworn statement from Deputy Ron Long, who witnessed the incident. According to Deputy Long, Plaintiff was lying on his back on the floor of his cell, not resisting in any way, when Deputy McAllister "hit [Plaintiff] several times in the face ... [then] made a comment if you want anymore, just call me and I will be glad to come back and give you some more of this ... [a]nd then he moved way and ... [Ruiz] went down on his knee into the torso of [Plaintiff]." (Doc. 35 Ex. C.) Plaintiff contends that he sustained bruises as a result of the blows administered by Deputy McAllister.

■ Viewing the facts in this case in the light most favorable to Plaintiff, there is little doubt that striking a detainee in the face several times when he is not resisting constitutes excessive force. Further, while Plaintiff's bruises may not constitute an injury "of great significance," they nevertheless constitute an actual injury and that is what is required for an excessive-force claim to be compensable. *See Howard v. Barnett,* 21 F.3d 868, 872–73 (8th Cir.1994). Deputy McAllister is not entitled to qualified immunity for the alleged use of excessive force, as Plaintiff's right to be free of such force was clearly established, that is Deputy McAllister could not have reasonably but erroneously believed that his conduct was lawful. *See Saucier v. Katz,* 533 U.S. 194, ——, 121 S.Ct. 2151, 2158, 150 L.Ed.2d 272 (2001) (qualified immunity does not shield conduct which violates clearly established rights; inquiry in determining whether a right is clearly established is whether officer could have reasonably but erroneously believed that his conduct was lawful). Accordingly, Plaintiff's excessive-force claim against Deputy McAllister in his individual capacity is not appropriate for summary judgment.

**State-law Battery Claim**

■ Plaintiff asserts a battery claim against Deputies Ruiz and McAllister. Defendants argue that they are entitled to summary judgment on this claim, as they are immune under Arkansas Code Annotated § 21–9–301. Defendants' argument is without merit, as this statute does not shield intentional torts such as battery. *See West Memphis Sch. Dist. v. Circuit Court of Crittenden County,* 316 Ark. 290, 871 S.W.2d 368, 371 (1994).

**Sheriff Ross in his Individual Capacity**

Sheriff Ross argues that he is entitled to summary judgment, as he was not personally involved in the use of force on Plaintiff, there is no proof that he failed to adequately train or supervise the deputies involved, and there were policies and practices in place to prevent the use of excessive force on detainees. Sheriff Ross argues that even if he did engage in conduct that somehow violated Plaintiff's rights, he is entitled to qualified immunity. Plaintiff responds that Sheriff Ross acted with deliberate indifference in hiring Deputy Ruiz, as Deputy Ruiz had a prior felony conviction for an unspecified offense from the State of Oregon; he had an extensive his-

tory of misconduct at two other detention facilities, ranging from threatening other deputies to slapping an inmate; he had previously worked at and been terminated from CCDC for disobeying a direct order not to leave his post; and two protective orders had been issued against Ruiz in the past for violent behavior towards his ex-wife and girlfriend. Plaintiff also argues that Sheriff Ross condoned Deputy Ruiz's use of force against Plaintiff after the fact by failing to terminate him until approximately two weeks later when three other inmates complained of Ruiz harassing them.

■ Sheriff Ross may be held individually liable under Section 1983 if he directly participated in the alleged use of excessive force or if his failure to properly supervise or train the offending deputies caused the use of excessive force. *See Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir.1996). The standard for liability is whether Sheriff Ross was deliberately indifferent to or tacitly authorized the use of excessive force. *See id.* Plaintiff has offered no evidence of any direct involvement or failure to train or supervise on Sheriff Ross's part that can be said to have caused the alleged use of excessive force. Even if, as Plaintiff contends, Sheriff Ross condoned Deputy Ruiz's conduct by failing to immediately terminate him, this occurred after the fact and thus did not cause Ruiz's conduct.

■ We next address Plaintiff's argument that Sheriff Ross was deliberately indifferent in hiring Deputy Ruiz. To establish that Sheriff Ross's hiring decision amounted to deliberate indifference, Plaintiff must prove that adequate scrutiny of Deputy Ruiz's background would have lead a reasonable supervisor to conclude that Deputy Ruiz's use of excessive force would be a plainly obvious consequence of the hiring decision. *See Board of the County Comm'rs of Bryan County v. Brown*, 520

U.S. 397, 411, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). A finding of culpability depends on whether Deputy Ruiz was "highly likely to inflict the *particular* injury suffered by the plaintiff." *Id.* At 412.

■ Deputy Ruiz's record included a prior felony conviction, but there is no indication that it was for a violent offense. With regard to Deputy Ruiz's misconduct during his prior period of employment at CCDC and at two other detention facilities, only a few of these infractions would be relevant to any propensity for violence. First, in 1996, Deputy Ruiz was suspended briefly and placed on six months probation for slapping an inmate at the Sebastian County Detention Center. In 1997, Deputy Ruiz was reprimanded for "mouth[ing] off" to two fellow deputies at Sebastian County and "invit[ing] [one of them] to the gym any day, any time . . . to take care of [it]." In 1998, the Benton County Detention Center issued a warning report against Deputy Ruiz after he had acted disobedient towards a nurse and the nurse overheard him say "he was going to knock that bitch out." As to the two protective orders issued against Deputy Ruiz, the first was issued in 1997, after Ruiz's ex-wife accused him of running her off the road, tearing a necklace off her neck, and pushing her. The second protective order was issued in 1999, after Ruiz's girlfriend accused him of grabbing her arm and throwing her and of having threatened and assaulted her before.

In *Bryan County*, the officer alleged to have used excessive force had a criminal record that included resisting arrest and assault and battery. Looking at this record, the Supreme Court held that the sheriff's failure to examine the officer's criminal record did not reflect a conscious disregard to a high risk that the officer would use excessive force. Likewise, in the present case, Deputy Ruiz's record did

not reveal a high risk that he would use excessive force. While Deputy Ruiz had slapped an inmate at another detention facility, this occurred approximately four years prior and it was an isolated incident. While Deputy Ruiz may have also made what could be construed as threatening remarks towards three other detention center personnel, the most recent of these incidents occurred two years prior and there is no indication that these incidents were anything more than "mouth[ing] off." As to the two protective orders issued against Deputy Ruiz, while they might reveal a propensity for violence against the women in his life, this does not translate into a high risk of using excessive force against detainees.

Ruiz's record may have made him a poor candidate for a position as a detention center deputy, but it would not have lead a reasonable supervisor to conclude that there was an obvious risk that he would use excessive force if hired. Accordingly, Sheriff Ross' decision to hire Ruiz did not constitute deliberate indifference. *Cf. Gros v. City of Grand Prairie*, 209 F.3d 431, 435–36 (5th Cir.2000) (although there were scattered statements in officer's pre-employment file suggesting that he was sometimes too aggressive, overbearing, and abusive during traffic stop, police chief, in hiring officer, was not deliberately indifferent to risk that he would sexually assault women during traffic stops; evidence did not establish strong causal connection between officer's background and particular violations asserted).

Based on the foregoing, the Court concludes that Plaintiff's claims against Sheriff Ross in his individual capacity are subject to summary judgment, as there is no evidence that Sheriff Ross was directly involved in the alleged use of excessive force, that any failure to train or supervise on his part caused it, or that he acted with deliberate indifference in hiring Deputy Ruiz. Given this conclusion, it is not necessary to address whether Sheriff Ross would be entitled to qualified immunity.

**Crawford County**

Under Section 1983, a municipality can be held liable for the unconstitutional acts of its employees if a municipal policy or custom was the moving force behind the constitutional violation. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiff argues that as Sheriff Ross is the policy maker for CCDC, his decision to hire Deputy Ruiz is attributable to the county. As discussed above, however, Sheriff Ross's decision to hire Ruiz did not constitute deliberate indifference and thus, it provides no basis for municipal liability.

**Conclusion**

Defendants' motion for summary judgment is hereby GRANTED IN PART and the following claims are hereby DISMISSED: Plaintiff's claims against Defendants Ruiz and McAllister in their official capacities; Plaintiff's claims against Defendant Ross in both his individual and official capacities; and Plaintiff's claims against Crawford County. Defendants' motion is DENIED in all other respects and Plaintiff's claims for excessive force and battery against Defendants Ruiz and McAllister in their individual capacities will proceed to trial as scheduled on November 5, 2001. While Defendants Ruiz and McAllister may prevail on these claims at trial, there are genuine issues of material fact that preclude a finding in their favor at the summary judgment stage.